## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
**Bid Protest**

| | |
|---|---|
| SOS INTERNATIONAL LLC, | ) |
| *Plaintiff,* | ) **REDACTED** |
| | ) **VERSION** |
| | ) |
| v. | ) No. _____ |
| | ) |
| UNITED STATES, | ) |
| | ) ████████████████████████ |
| *Defendant.* | ) ████████████████████████ |
| | ) |

## COMPLAINT

Plaintiff, SOS International LLC ("SOSi"), by its undersigned counsel, hereby submits this bid protest challenging the corrective action taken by the U.S. Department of Justice, Drug Enforcement Administration's ("DEA" or "Agency") in response to a previous protest challenging the Agency's award decision under Solicitation No. 15DDHQ25Q00000031 ("RFQ" or "Solicitation").[2]

## NATURE OF THE ACTION

1.    This bid protest challenges the corrective action that the Agency took in response to a bid protest brought by PGLS, LLC ("PGLS") before the U.S. Government Accountability Office ("GAO").

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[2] As stated in SOSi's pre-filing notice filed on September 3, 2025, SOSi and the Government are actively discussing the Government taking voluntary actions such that there will be no need for SOSi to seek temporary restraining order or preliminary injunctive relief. SOSi reserves its right to move for such relief should the Government decline to take voluntary action.

2. SOSi was the awardee, selected for its significantly superior technical quote at a price that was ███████████████ under a Solicitation which stated that the technical factors were significantly more important than price. SOSi's price is ████████. SOSi intervened in PGLS's GAO protest.

3. Shortly after PGLS filed its protest, the Agency released an early production of documents which clearly demonstrated that PGLS's challenge to SOSi's award had no substantive basis. Specifically, the Agency's detailed Award Decision Memorandum explained that SOSi and ██ other bidders that did not protest the award, █████████████████ ████████████████. PGLS, on the other hand, ████████████ ████████████████████, at a price that was ████████████. ███████████████████████ ██████. In a procurement where the technical factors were significantly more important than price, the difference between offerors was clear, as was the fact that PGLS's protest would not succeed.

4. Notwithstanding the merits of the award decision, after the early document production, PGLS withdrew its GAO protest and filed a pre-filing notice with this Court. In response to PGLS's continued challenge and some initial feedback from GAO ████████ ██████████████████████████████ ███████████, the Agency announced that it planned to take corrective action *solely* to better document what was already clear from the evaluations ████████████ ███████████████. Thus, the Agency announced: "DEA has determined to re-evaluate offers and will issue an official notice to the offerors (PGLS and SOSi) when it makes a new award decision."

5.      Given the significant differences between SOSi and PGLS, GAO's inquiry and the ensuing corrective action were unnecessary and unreasonable.

6.      Not only was it unreasonable for the Agency to take any corrective action whatsoever, but the issue was compounded when the Agency unreasonably expanded the scope of its planned corrective action.  Rather than reevaluate the existing quotes as originally announced by the Agency, the Agency has now issued an amendment to the RFQ permitting *all* bidders to submit revised technical quotes and pricing without any limitation on the nature of the revisions. This action is entirely unnecessary and unreasonable, when the plain language of the amendment states that it "does not include any material changes."  It simply clarifies one aspect of the RFQ which, to any contractor even remotely familiar with this type of work, was inherent in the Solicitation as originally written such that no amendment was necessary.

7.      Even though the amendment does not make any material changes to the technical requirements, it requests revised technical and price quotes and plans for an entirely new evaluation.  This is shocking and highly prejudicial given that SOSi's original price is ███████████ ██████.  The Agency has asked for revised technical and price quotes without any regard for the fact that there have been no material changes to the scope of work and that SOSi's proposed price is ████████████████.  The result is an unreasonable and unsupportable Agency request for offerors to do nothing more than race to the bottom on price.  There is no rational basis for the amendment, and certainly no justifiable reason to invite revised pricing.

8.      It is patently improper and inconsistent with procurement law to strip an awardee of a contract that it won fairly, and reopen the competition to offerors after disclosing the awardee's price, for the sole purpose of making non-substantive amendments to the Solicitation.

9.     Accordingly, SOSi respectfully requests that the Court (a) declare that the Agency's decision to take corrective action in response to PGLS's protest is both unreasonable and in violation of federal law and regulation, and (b) issue permanent injunctive relief enjoining the Agency from accepting revised quotes, and from undertaking any further efforts to re-open the competition and make a new source selection decision or terminate SOSi's rightfully awarded contract.

10.     Alternatively, to the extent the Court finds some measure of corrective action is reasonable, SOSi respectfully requests that the Court (a) declare that the Agency's decision to take corrective action in the form of a non-substantive solicitation amendment inviting all offerors to submit revised quotes is both unreasonable and in violation of federal law and regulation when, at most, corrective action to better document the rationale for any tradeoffs in making the award in response to a substantively questionable protest was required, and (b) issue permanent injunctive relief enjoining the Agency from: (i) accepting revised quotes, (ii) undertaking any further efforts to re-open the competition; and (iii) taking corrective action beyond the re-evaluation of previously submitted quotes and issuing a new award decision based thereon.

## PARTIES

11.     Plaintiff, SOSi, is a Limited Liability Company registered under the laws of Delaware.

12.     The Defendant, the United States of America, is acting by and through the U.S. Department of Justice, Drug Enforcement Administration.

## JURISDICTION AND STANDING

13.     The U.S. Court of Federal Claims has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b).  Under the Tucker Act, the Court of Federal Claims possesses

jurisdiction to adjudicate bid protests challenging, *inter alia*, a "solicitation by a Federal agency for bids or proposals for a proposed contract," as well "as any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also Wildflower Int'l, Ltd. v. United States*, 105 Fed. Cl. 362, 382 (2012) ("This court has held that corrective action is part of an agency's procurement process and, thus, a protest of a corrective action falls within this court's bid protest jurisdiction as an objection to a solicitation." (citing *Sys. Application & Techs, Inc. v. United States*, 100 Fed. Cl. 687, 705-06 (2011), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012)); *Ceres Gulf, Inc. v. United States*, 94 Fed. Cl. 303, 315 (2010) ("This Court has held that where a plaintiff, as the contract awardee, files a protest challenging an agency's decision to resolicit a proposal, the plaintiff's protest is in the nature of a pre-award claim." (internal quotation marks omitted)). "To afford relief in such an action," the Court "may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

14.     SOSi has standing to bring this protest because SOSi is an interested party and its direct economic interests are affected by the Agency's decision to re-open the competition and accept revised quotes including price after making a well-supported award decision to SOSi, ███████████████████████, and releasing SOSi's technical ratings to at least one other offeror. *See* 28 U.S.C. § 1491(b)(1) (providing that the Court "shall have jurisdiction to render judgment on an action by an interested party"); *see also Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) ("[T]o come within the Court of Federal Claims' section 1491(b)(1) bid protest jurisdiction, [a protestor] is required to establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest."); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362-63 (Fed. Cir. 2009) (stating that in the context of a pre-award bid

protest challenging the terms of a solicitation, to show the requisite "direct economic interest," and, therefore, to be an "interested party," the protestor must establish that it has suffered a "non-trivial competitive injury which can be redressed by judicial relief."); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d at 1382-83 (finding that the plaintiff "assert[ed] the necessary injury for standing" where "[f]irst, the Army's decision to engage in corrective action will arbitrarily require [the protestor] to win the same award twice," and, "[j]ust as important, the Army's decision to engage in corrective action will require [the protestor] to re-compete for a contract after its price had been made public").

## FACTUAL BACKGROUND

### I.    Initial Solicitation as Amended

15.    Amendment 00002 of the Solicitation, which was the version of the Solicitation pursuant to which offerors submitted quotes and award was made to SOSi, was issued on April 17, 2025. Ex. 1 at 1. The Solicitation was issued under the "GSA Professional Services Schedule (PSS), Language Services, schedule, Category 382-4 Comprehensive Linguistic Analytical Support Services schedule (NAICS 541930)," and sought to award a Blanket Purchase Agreement against which call orders would be placed. *Id.* at 6-7. The Solicitation contemplated a period of performance "commenc[ing] on the effective date of the BPA through 12 months plus four consecutive 12-month option periods." *Id.* at 6.

16.    The Solicitation contemplated that the scope of work would involve "provid[ing] highly skilled intelligence and language analysis support to perform language-related services, including analysis, monitoring, transcription, translation, interpretation, validation, and minimization," and that "National Linguist Services will be ordered by Call orders on an as needed basis in support of the DEA Title III Wiretap program." Ex. 1 at 6.

17.     The Solicitation identified eight evaluation factors: (1) Staffing Plan; (2) Analytical Linguist Experience; (3) Quality Control Plan; (4) Security Plan; (5) Invoicing/Fiscal Tracking System; (6) Past Performance; (7) Corporate Experience; and (8) Price.  Ex. 1 at 90-92.

18.     The non-price technical factors (Factors 1-7) were to be rated as either High Confidence, Some Confidence, or Low Confidence.  Ex. 1 at 93.  Price was not rated using the Confidence scale; however, price was to be "evaluated in accordance with FAR 8.405-2(d)."  *Id.*

19.     The Solicitation explained that "[a]ll Factors are of equal importance except for Factor 8 – Price, which is less important than Factors 1 – 7"; however, "[i]f there are no significant technical differences, cost/price alone may be the determining factor."  Ex. 1 at 93.  Furthermore, "[a]ll evaluation factors other than cost/price, when combined, are significantly more important than cost or price."  *Id.*

20.     The Solicitation stated that, "[i]n accordance with FAR Part 8.405-3, award will be made on a best-value basis," and "[t]he Government will make award to the responsive, responsible Quoter whose quote is most advantageous to the Government, price and other factors considered."  Ex. 1 at 90.  The Solicitation also stated that "[t]his is a Best Value procurement using the Trade-Off method.  The Government may or may not award to the lowest priced Quoter or highest technically rated Quoter.  Award shall be based on the Best Value overall to the Government."  *Id.*

## II.     The Competition and Source Selection Decision

21.     Quotes were to be submitted through GSA eBuy no later than May 1, 2025, at 10:00 am EST.  Ex. 1 at 84.

22.     The Agency completed its evaluation on June 27, 2025.  In addition to a Business Evaluation Report prepared by the Contract Specialist (Ex. 2) and a Price Analysis Report (Ex. 3),

the Source Selection Authority ("SSA") (the Contracting Officer) prepared a 38-page Award Decision Memorandum ("ADM") documenting the Agency's evaluation of the nine offerors that submitted quotes, and the decision to make an award to SOSi.  Ex. 4.

23.    As relevant here, ████████████████████████████████████████

████████████████████.  Ex. 4 at 4-5.

24.    ████████████████████████████████████████████████

████████████████████████████████████████████████:



Ex. 4 at 5-6.

25.    As demonstrated by the above table, ████████████████████

████████████████████████████████████████████████

████████████████████████



[redacted]. Ex. 4 at 4-5.

26. [redacted], which explained that the contract's scope involved Title III monitoring and that offerors would be assessed under Factors 6 and 7, in part, on the relevance of their past performance to the scope of the work. Ex. 1 at 91-92.

27. The Agency found that SOSi's quote represented the best value because, [redacted]

Ex. 4 at 37 (emphasis added).

28. SOSi's total evaluated price was [redacted]. Ex. 4 at 36.

29. The total price for PGLS, [redacted]. Ex. 4 at 36.

30. The Agency conducted technical and price evaluations for all offerors, including PGLS, and conducted a tradeoff analysis [redacted]

[redacted]

██████████ . ███████████████████████████████████

██████████ ████████████████████████████████████

███████████████████████████████████████████████

██████████ " Ex. 4 at 35-36.

## III.   **Award Notifications**

31.     On July 8, 2025, the Agency notified SOSi that it had received the award.   The

Notice of Award stated:

> We have completed our evaluation of the quotes received and would like to provide
> you with information regarding your submission, in accordance with FAR 8.405-
> 2(d).
>
> The award decision was based on the evaluation criteria and the relative importance
> of factors as outlined in the solicitation, w████████████████████████████
> ███████████████████ .
>
> █████████████████████████████████ .
>
> The table below summarizes the overall confidence rating of your quote and total
> evaluated price.

| SUMMARY OF OVERALL CONFIDENCE RATING | | |
|---|---|---|
| QUOTER | SOSi | |
| RATING | ████████ | |
| SUMMARY OF TOTAL EVALUATED PRICE | | |
| QUOTER | SOSi | |
| TOTAL EVALUATED PRICE | ████████ | |

Ex. 5 at 1.

32.     SOSi's awarded price is ██████████████████████████████████

██████████████     Ex 6 at 1 (indicating SOSi's awarded price as ██████████ ).

████████████████████████

33.    PGLS received a similar notice, except that it explained that PGLS's quote " ███ ████████████████████████████████████████ " and provided a table summarizing PGLS's overall rating and price:

| SUMMARY OF OVERALL CONFIDENCE RATING | |
|---|---|
| QUOTER | PGLS |
| RATING | ██████████████ |
| SUMMARY OF TOTAL EVALUATED PRICE | |
| QUOTER | PGLS |
| TOTAL EVALUATED PRICE | ████████ |

Ex. 7 at 1.

## IV.    PGLS's Protest and GAO Proceedings

34.    PGLS filed its protest with GAO on July 7, 2025.  After PGLS received the Notice of Unsuccessful Offeror described above, PGLS filed an "Amended and Consolidated Protest" the next day, on July 8.

35.    No other company protested SOSi's award, ██████████████████████████ ████████████████████████.

36.    PGLS's Amended and Consolidated Protest (hereafter, PGLS's "protest") advanced three arguments.  As explained in PGLS's protest:



11

.

Ex. 8 at 1-2.

37.    In response to the protest, on July 29, 2025, the Agency released an early production of documents which included, in relevant part, the Independent Government Cost Estimate ("IGCE"), the Source Selection Plan ("SSP"), and redacted versions of the Business Evaluation Report, the Price Analysis Report, and the ADM.  The redacted version of the ADM included the table in Paragraph 24, *supra*, comparing offerors' technical evaluations.  *See* Ex. 4 at 5-6 (showing that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ).

38.    In a procurement where the technical evaluation was valued significantly more important than price, there would be no reasoned basis to justify an award at a ████████████ ██████████████████████████████████████.

39.    As discussed in Paragraph 27, *supra*, the redacted ADM also explained ████████ ██████████████████████████████ ████████████████████████████ ██████████████████████████████. Ex. 4 at 37.

40.    PGLS objected to the scope of this early production and sought additional documents.

41.    Thereafter, on July 29, 2025, a GAO attorney overseeing the case while the assigned GAO attorney was on vacation, requested a short conference call with the parties, to be held the next day.  On the conference call, ████████████████████████████████████

████████████████████████████████



.

42. ███████████████████████████████████████████

████████████████████████████████████t.

43. During the call with GAO, counsel for PGLS requested the release of a PGLS-only version of the ADM for his client. Subsequently, all parties agreed to release, only to PGLS, of the redacted version of the ADM that the Agency submitted as part of its early document production.

44. On August 4, 2025, after the release of the PGLS-only version of the ADM to PGLS, counsel for PGLS filed a Notice of Withdrawal at GAO explaining that "PGLS plans to pursue a protest of this procurement at the United States Court of Federal Claims." Later the same day, GAO filed a Confirmation of Withdrawal on the GAO docket. Also on that date, PGLS filed a pre-filing notice indicating its intent to file a protest in the Court of Federal Claims.

**V.  The Agency's Announcement of Corrective Action and Actual Corrective Action**

45. On August 6, 2025, notwithstanding that the initial award decision was clearly justified, Agency counsel—apparently in response to GAO's comments during the status call and the pre-filing notice submitted by PGLS—informed SOSi's and PGLS's counsel that the Agency intended to take limited corrective action in response to PGLS's protest.

46.     The Agency counsel's notice stated, in its entirety, that "DEA has determined to re-evaluate offers and will issue an official notice to the offerors ("PGLS and SOSi) when it makes a new award decision.  In the meantime, there will be no performance of SOSi's the [sic] previously awarded contract."  Ex. 9.

47.     On August 11, 2025, PGLS rescinded its pre-filing notice.  Corrective action then proceeded.

48.     Contrary to the limited scope of corrective action announced by Agency counsel, on August 19, 2025, two weeks after the Agency was supposed to have been engaged in a reevaluation of existing quotes, the Agency suddenly issued Amendment 00003 to the Solicitation. Ex. 10 (amended language in red font).

49.     The revised Solicitation explicitly stated that "Amendment 00003 does not include any material changes." Ex. 10 at 2.

50.     The only substantive change to the technical requirements which, as explained by the Agency, was not material, was that in a number of places, the amendment clarified that the scope of work will require "real-time (live) analytical linguist support under Title III of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. § 2510)" and emphasized the importance of that experience in the Factor 6 (Past Performance) and Factor 7 (Corporate Experience) evaluation.  *See* Ex. 10 at 84-86, 90-91.  Not only is the change not material but, whether or not a company has such experience is immaterial to the cost of performance and does not necessitate a change to offerors' proposed pricing.

51.     Amendment 00003 also changed the relative importance of the technical Factors. *See* Ex. 10 at 92.  Where, previously, all technical Factors were of equal importance and more important than price, Amendment 00003 now provides that technical Factors 6 (Past Performance)

14

and 7 (Corporate Experience) are more important than technical Factors 1-5. However, as with the prior version of the Solicitation, price is still the least important factor, and, "in the absence of significant technical differences among quotes, the cost/price factor may become the determining factor for source selection." *Id.* Once again, this does not change the cost of performance or require a revision to proposed pricing.

52.     In addition, Amendment 00003 changed the criteria to receive a High Confidence rating under technical Factor 6 (Past Performance), stating: "In order to receive a HIGH CONFIDENCE rating in past performance, real-time (live) analytical linguist support of lawful real-time intercepts must be shown in provided past performance." Ex. 10 at 86. Again, this does not change the cost of performance or require a revision to proposed pricing.

53.     Finally, notwithstanding that this is a FAR Part 8 procurement, Amendment 00003 clarified that:

> In accordance with FAR 15.306(c), the Government intends to evaluate quotes and, if discussions are to be conducted, establish a competitive range comprised of all the most highly rated quotes, unless the range is further reduced for purposes of efficiency. Offerors are advised that the Government may limit the number of quotes in the competitive range to the greatest number that will permit an efficient competition among the most highly rated quotes. Offerors not included in the competitive range will be notified.

Ex. 10 at 89. Like the other amendments, this also does not change the cost of performance or require a revision to proposed price.

54.     In the context of the above-referenced amendments, the Agency's statement that "Amendment 00003 does not include any material changes" makes sense. Indeed, contractors doing business in this industry are well-aware that Title III translation services—*i.e.*, translation support of criminal wire taps, depositions, witness interviews, etc.—necessarily require real-time translation. Even in the previous version of the Solicitation upon which award to SOSi was made,

the Agency had made clear that it was looking for a solution that could provide "**rapid and meticulous** understanding of foreign languages used in conversations by speakers of languages other than English and in the analysis, translation, transcription and preparation of written documents." Ex. 1 at 20 (emphasis added).

55.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

56.    Notwithstanding that Amendment 00003 did not make any material changes to the Solicitation, it instructed offerors to submit revised technical and price quotes by no later than September 10, 2025 at 10:00 am EST. Ex. 10 at 83.

57.    As a result, all offerors, ███████████████████████████████████████████████████████████████████████████████████████████, will have the opportunity—with the benefit of SOSi's ███████████████—to submit a new price and try to ███ ██████ despite not having to materially change their existing proposed solution.

58.    On September 5, 2025, SOSi filed the instant Complaint at the Court of Federal Claims.

\* \* \*

## CLAIMS FOR RELIEF

### COUNT I
**The Agency's Decision to Take Corrective Action in the First Instance is Arbitrary, Capricious, Lacks a Rational Basis and a Coherent and Reasonable Explanation, and Constitutes a Violation of Applicable Procurement Law.**

59.     SOSi incorporates by reference Paragraphs 1 through XX of this Complaint as if set forth herein.

60.     The Agency's corrective action fails to comport with applicable law and is arbitrary, capricious, lacks a rational basis, and is inadequately justified.

61.     There was nothing improper about the Agency's initial award to SOSi.   The Agency's decision to take corrective action in response to PGLS's GAO protest is arbitrary and offends fair competition.  *See Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 719 (2011) ("In sum, because the source selection decision was a rational exercise of the Army's discretion and should therefore not be disturbed, the Army's decision to take corrective action in response to Kratos's protests is irrational."), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012).

62.     Indeed, none of the three arguments advanced by PGLS at the GAO provided a basis to sustain the protest. ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████.

63.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████.

64.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████.

65.     ████████████████████████████████████

████████████████████████████████████████████

███████████████████████████.

66.     Thus, none of PGLS's protest grounds had any merit and there was nothing improper in the Agency's initial award to SOSi.

67.     As such, the Agency's decision to take corrective action in the first instance is arbitrary, capricious, lacks a rational basis, and a coherent and reasonable explanation, and constitutes a violation of applicable procurement law.

████████████████████████████████

**COUNT II**
**The Scope of the Agency Corrective Action is Arbitrary, Capricious, Lacks a Rational Basis and a Coherent and Reasonable Explanation, and Constitutes a Violation of Applicable Procurement Law.**

68.    SOSi incorporates by reference Paragraphs 1 through 67 of this Complaint as if set forth herein.

69.    Even assuming that the Agency's originally announced corrective action, *i.e.,* the reevaluation of existing quotes, was reasonable (which, it was not for the reasons explained above), there is no cognizable basis for the Agency's <u>actual</u> corrective action, *i.e.* allowing all offerors to revise their quotes, including price.  *See CAN Softtech, Inc. v. United States*, 177 Fed. Cl. 379, ("The Court finds that the record provides sufficient clarity to reasonably discern the decisional path supporting GSA's rational choice to reevaluate quotes under the Solicitation, given the alleged evaluation errors Octo Metric identified in its protest before the GAO.  That reasonably discernible decisional path, though, does not extend to the Agency's choice to cancel the award to CSI and to re-solicit.").

70.    Indeed, there is no indication that the Agency did, or could, document a reasonable basis for the decision to issue Amendment 00003 as required to support the change in direction of its corrective action.  *See id.*

71.    By the Agency's own admission, there were no material changes to the Solicitation, ████████████████████████████████████████████████████.  Thus, there is no rational basis for the Agency to accept revised pricing, particularly since SOSi's price is ████ ████████████████████████ █████████████████████████████████████████ and could use this solely as an opportunity to ████████████████████ without changing their technical quotes.

72.     Notwithstanding that agencies generally have broad discretion as to how they may fashion corrective action, corrective action still "requires a rational basis for its implementation," meaning that the "agency [must] provide[] a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 991-92 (Fed. Cir. 2018).

73.     The Agency has failed to set forth any coherent or reasonable explanation for why it took corrective action in the first instance, let alone why it deviated from the corrective action it announced and took corrective action that prejudices SOSi as the awardee of a fairly awarded contract. The decision to deviate from the originally announced corrective action is arbitrary, capricious, lacks a rational basis, and a coherent and reasonable explanation, and constitutes a violation of applicable procurement law.

74.     Even if the Court were to find that amending the Solicitation as part of the corrective action was reasonable (which it was not), there is certainly no rational basis for the Agency to allow offerors the opportunity to revise pricing as part of the amendment. As discussed in Paragraphs 50-54, *supra*, the revised Solicitation language, in relevant part: (a) clarified that the linguistic services to be performed under this Title III Wiretap Act requirement contain a "real-time (live)" component—which could have reasonably been inferred given the nature of the linguistic services to be performed under Title III; (b) revised the criteria to receive a High Confidence under Factor 6 (Past Performance) such that "real-time (live) analytical linguistic support of lawful real-time intercepts" now must be demonstrated in past performance submissions; and (c) modified the relative importance of technical evaluation factors such that technical Factors 6 (Past Performance) and 7 (Corporate Experience) are now more important than technical Factors 1-5.

75.     None of these revisions add to or subtract from the scope of work such that there is any reasonable basis to allow offerors to re-price their offers. ████████████████████ ████████████████████████████████████████████

76.     Thus, there is no conceivable rational basis to require revised pricing, other than to allow offerors, ████████████████████████████████████████████ to try to ████████ ████████████████—nor has the Agency attempted to articulate one.

77.     Furthermore, to the extent the Agency has attempted to undertake this corrective action in preemptive defense against a subsequent protest by PGLS ████████████████ ████████████████████████████████, the revisions to the Solicitation are superfluous and unnecessary.

78.     PGLS scored ████████████████████ on ████ out of the seven technical Factors due to a ████████████████████. The section of PGLS's evaluation that considered ████████████████████████████████ ████████. It is certainly not determinative of the Agency's award decision.

79.     ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████

████████████████████████████

80.    To be sure, the version of the Solicitation upon which the existing quotes were evaluated (and SOSi received an award) clearly and repeatedly put offerors on notice that this contract involved Title III monitoring and experience with the associated translation services was important.  Indeed, Title III was referenced ten times in the previous Solicitation.  *See, e.g.*, Ex. 1 at 6 ("National Linguist Services will be ordered by Call orders on an as needed bases in support of the DEA **Title III** Wiretap program." (emphasis added)), 20 ("While technology plays a major role in the DEA's efforts, much of its success is increasingly dependent upon **rapid and meticulous** understanding of foreign languages used in conversations by speakers of languages other than English and in the analysis, translation, transcription and preparation of written documents.  One way of meeting this mission is through telephonic monitoring of court ordered nonconsensual intercepts (Pub.L.91-513 **Title III**), consensual listening devices and other media, and the subsequent analysis, transcription, and translation of recorded material." (emphasis added).

81.    Accordingly, the Solicitation already put offerors on notice that this was a Title III requirement, and the Agency was well-within the bounds of the Solicitation to ████████████ ██████████████████████████████████████████████████████████████████ regardless of whether "real-time (live)" had been specifically referenced in the Solicitation.  The addition of language clarifying that Title III monitoring involves a "real-time (live)"—which was the primary impetus of the amended Solicitation—serves no purpose.  If anything, clarifying that offerors needed to have real-time translation experience when ████████████████████████ ████████████████████████████████████████████████, and PGLS, the only offeror that protested the award████████  ████████████████████████ ████████████████.

82.     Thus, as discussed above, clarifying that Title III involves such a live component does not necessitate that offerors be given an opportunity to submit revised quotes with updated pricing. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████.

83.     Critically, unless permanent injunctive relief is granted to enjoin the Agency from allowing offerors to submit more competitive pricing, SOSi will be immediately and irreparably harmed.  SOSi's awarded price is ████████████████████████████████████

████████████████████████, and those offerors are now allowed to revise their quotes, including price, without any significant change to the technical requirements. *See* Ex. 6 (indicating SOSi's awarded price on FPDS).

84.     The courts have repeatedly found that the loss of an opportunity to compete for a contract on a level playing field sufficiently establishes irreparable harm.  *See, e.g.*, *Sys. Application & Techs., Inc. v. United States*, 691 F.3d at 1383 ("[T]he Army's decision to engage in corrective action will require SA–TECH to re-compete for a contract after its price has been made public.  Unquestionably an offeror's participation in the procurement process involves some acceptance of risk.  The risk of recompeting for a contract after revelation of one's price calculations, however, does not extend to a contract fairly competed and won on the first solicitation." (citation omitted)).

85.     If the Court does not suspend the Agency's unwarranted "corrective" action, SOSi unfairly will lose the bidding costs and time investment it made based on the Agency's promise of a fair competitive opportunity.  More importantly, SOSi will have to recompete for an award that

████████████████████████████████████████

it rightfully received against other offerors that can now ███████████ ██████████
███ ██████████████████████████████████████████████████████████████████████
████████████████████████████████████████.

## **REQUEST FOR RELIEF**

SOSi respectfully requests this Court enter judgment in Plaintiff's favor and grant the following relief:

1. A Declaratory Judgment providing that:

   a. the Agency's decision to take corrective action is arbitrary, capricious, lacks a rational basis and a coherent and reasonable explanation, and constitutes a violation of applicable procurement law;

   b. the scope of the Agency's corrective action is overbroad, arbitrary, capricious, lacks a rational basis and a coherent and reasonable explanation, and constitutes a violation of applicable procurement law;

   c. the initial award to SOSi under the Solicitation remains valid and not subject to corrective action based on PGLS's GAO protest or for any other bases.

2. Permanent injunctive relief that enjoins the Agency from:

   a. Taking corrective action in response to PGLS's GAO protest;

   b. Proceeding with Amendment 00003 to the Solicitation;

   c. Re-opening the competition, through amendment to the Solicitation or otherwise;

   d. Requesting revised quotes, including price;

   e. Terminating SOSi's award;

   f. Such other relief as the Court may deem just and proper.

Respectfully submitted,



s/Dawn E. Stern
Dawn E. Stern
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4405
Fax: (202) 799-5025
E-mail: dawn.stern@us.dlapiper.com
*Counsel for SOS International LLC*

Of Counsel:
David R. Lacker
Andrew W. Current
DLA Piper LLP (US)

Dated: September 5, 2025

## **Table of Exhibits**

| Exhibit No. | Description |
|---|---|
| 1 | Solicitation – Amendment 00002 |
| 2 | Business Evaluation Report |
| 3 | Price Analysis |
| 4 | SSA Award Decision Memorandum |
| 5 | SOSi Award Notification |
| 6 | FPDS Initial SOSi Award Information |
| 7 | Unsuccessful Offeror Notice to PGLS |

| 8 | PGLS Amended and Consolidated GAO Protest |
| 9 | Email from Agency Counsel Regarding Corrective Action (8.6.2025) |
| 10 | Solicitation – Amendment 00003 |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing Plaintiff's Sealed Complaint, filed via electronic filing with the Court on September 5, 2025, was served on September 5, 2025, upon the following via email:

>   Steven Mager
>   U.S. Department of Justice
>   Commercial Litigation Branch
>   1100 L Street, NW, 8th Floor
>   Washington, DC 20530
>   Steven.mager@usdoj.gov
>
>   James Hicks
>   Attorney Finance and Ethics Section
>   DEA Office of Chief Counsel
>   James.hicks@dea.gov
>
>   Kenny Douangmala, Contracting Officer
>   U.S. Department of Justice, Drug Enforcement Agency
>   Kenny.J.Douangmala@dea.gov

>   Respectfully submitted,
>
>   <u>s/Dawn E. Stern</u>
>   Dawn E. Stern
>   DLA Piper LLP (US)
>   500 Eighth Street, NW
>   Washington, DC 20004
>   Tel: (202) 799-4405
>   Fax: (202) 799-5025
>   E-mail: dawn.stern@us.dlapiper.com
>   *Counsel for SOS International LLC*